**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANGELA KAY WILKINSON,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　Case No.  6:06-cv-1765-Orl-UAM

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

**MEMORANDUM DECISION**

Plaintiff Angela Kay Wilkinson ["Wilkinson"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying Wilkinson's application for Supplemental Security Income. *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I.**　　**PROCEDURAL HISTORY**

On May 3, 2004, Wilkinson filed an application for Supplemental Security Income claiming disability as of March 19, 2004. R. 51-55. The application was denied initially and on reconsideration. R. 24-25, 32-34. On May 25, 2006, the Honorable Gerald Murray, Administrative Law Judge ["ALJ"], held a hearing on Wilkinson's claim in Daytona Beach, Florida.  R. 183-208.  Attorney Richard Swartz represented Wilkinson at the hearing. *Id.*  The ALJ heard testimony from Wilkinson and Paul Dolan, a vocational expert ("VE"). *Id.*

On July 14, 2006, the ALJ issued a decision that Wilkinson was not disabled and not entitled to benefits. R. 14-20.  Following a review of the medical and other record evidence, the ALJ found that Wilkinson has the residual functional capacity ["RFC"] to perform light work, and she is limited to

occasional use of the right upper extremity as a guide, and occasional overhead reaching. R. 16, Finding 4. The ALJ found that Wilkinson is unable to perform past relevant work; however, considering her age, education and work experience, there are a significant number of jobs in the national economy that she could perform. R. 19, Findings 5, 9.  The ALJ concluded that Wilkinson was not disabled.  R. 22, Finding 10.

On September 16, 2006, the Appeals Council denied review. R. 4-6.  On November 16, 2006, Wilkinson timely appealed the Appeals Council's decision to the United States District Court. Docket No. 1.  On February 20, 2007, Wilkinson filed in this Court a memorandum of law in support of her appeal.  Docket No. 10.  On April 27, 2007, the Commissioner filed a memorandum in support of his decision that Wilkinson was not disabled.  Docket No. 15.  The appeal is ripe for determination.

## II. **THE PARTIES' POSITIONS**

Wilkinson assigns two errors to the Commissioner.  First, Wilkinson claims that the Commissioner made findings which are not supported by substantial evidence and applied incorrect legal standards in finding that Wilkinson has the RFC to perform light work. Second, Wilkinson claims the Commissioner did not apply the correct legal standard in considering Wilkinson's symptoms.  The Commissioner argues that substantial evidence supports his decision and the decision should be affirmed.

## III.     THE STANDARD OF REVIEW

### A.     AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.     REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a

Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C. REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate

where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon*

*v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

## V. APPLICATION AND ANALYSIS

### A. THE FACTS

#### 1. Plaintiff'S age, education, and work experience.

Wilkinson was born August 2, 1961. R. 51. Wilkinson was 42 at the onset of her alleged disability. R. 62. She completed the 12th grade in June 1979. R. 66 and 186. From 1977 until March 2004, Wilkinson worked as a farm laborer and as a produce clerk. R. 188-9. These occupations required that she unload a produce truck at market by piece (R. 189), frequently lifting 25 to 30 pounds (R. 63) and occasionally lifting up to 50 pounds. R. 187.

---

[1] The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

**2. Relevant Medical Evidence.**

At 18 or 19 years of age, Wilkinson was diagnosed with thoracic scoliosis. R. 105. On September 26, 1993, a chest x-ray at Shands Healthcare showed S-shaped scoliosis of the thoracolumbar spine with at least one anomalous vertebral segment in the mid-thoracic level and degenerative ostheophytic changes of the spine. R. 96. On October 14, 2004, a chest x-ray showed "[s]evere, deforming S-shaped scoliosis of the dorsal and upper lumbar spine with the mid-thoracic curve convex to the right and the lower thoracic and upper lumbar curve convex to the left." R. 102.

In September 1993, Wilkinson was diagnosed with Arnold Chiari-type 1 malformation[2] with extensive cervical thoracic syrinx based upon a 14 year history of progressive dysesthesias[3] in bilateral hands, causing numbness, burning, and weakness, wasting in both hands, and spasticity consistent with central cord syndrome. R. 93. She underwent a suboccipital craniectomy[4], a C1-2 laminectomy[5], and a wicking of the syrinx.[6] R. 93-95.

---

[2]Arnold-Chiari Malformation is characterized by a small or misshapen posterior fossa (the depression in the back of the skull), a reduction in cerebrospinbal fluid pathways and a protrusion of the cerebellar tonsils through the foramen magnum (the bottom of the skull) into the spinal canal resulting in multiple sensory-motor problems and even some autonomous malfunctions. N. L. Pollock, "The Complexity of Arnold-Chiari Formation", http://serendip.brynmawr.edu (1999).

[3]Dysesthesias is an impairment of sensitivity, especially to touch. Merriam-Webster, Inc., Medical Desk Dictionary 1986 (2005).

[4]A suboccipital craniectomy is the surgical removal of a portion of the skull below the occipital lobe of the brain. Merriam-Webster's Medical Desk Dictionary at 797, 177.

[5]A laminectomy is the surgical removal of the posterior arch of a vertebra. Merriam-Webster's Medical Desk Dictionary at 437.

[6]A wickening of the syrinx refers to the draining of fluid from a pathological cavity in the brain or the spinal cord. Merriam-Webster's Medical Desk Dictionary at 897, 813.

Upon examination on August 13, 1996, her treating physician, Richard H. Tessler, M.D., found that Wilkinson had intrinsic atrophy of her left hand as well as signs and symptoms of peripheral nerve entrapment.[7] R. 106. He noted that her extrinsic flexors seemed strong, her thumb extensors were strong, and her wrist extensors were strong. *Id.* He scheduled Wilkinson for a left carpal tunnel release.[8] *Id.* On January 13, 1997, Dr. Tessler noted his November 11, 1994 diagnosis of right thumb paralysis and transfer with the right thumb and finger extensors and deformity of the right thumb IP joint. R. 100. He reflected that his dictations were lost from the November 1994 operation but he had performed an intrinsic transfer with the right thumb and extensor transfer to finger extensors on the right and an arthrodesis of the IP joint of the right thumb. *Id.* He recalled that Wilkinson had improved function in her right hand after the operation performed in 1994, but the result was not excellent. *Id.* On the other hand, he stated that the carpel tunnel release performed in 1996 "significantly" helped Wilkinson. *Id.*

On June 4, 2002, Wilkinson complained to the emergency physician at Bert Fish Medical Center of upper back and head burning after she reported falling on her back and hitting her head. R. 109. On March 19, 2004, she complained of stiffness and difficulty in using or lifting her right arm and that her right arm was swollen. R. 111. Wilkinson was referred to Shands HealthCare. R. 111.

Upon examination on March 21, 2004, a cervical spine CT showed minimal anterior subluxation[9] of C2 on C3 with flexion (R. 136) and syrinx cavitation of the cervical thoracic cord without evidence

---

[7] Peripheral nerve entrapment is the chronic compression of a peripheral nerve, usually between ligamentous and bony surfaces, that is characterized by pain, numbness, tingling or weakness. Merriam-Webster's Medical Desk Dictionary at 253.

[8] A left carpal tunnel release is the decompression of the median nerve in the passage between the flexor retinaculum and the carpal bones. Merriam- Webster's Medical Desk Dictionary at 120.

[9] Subluxation is a partial dislocation, as of one of the bones in a joint such as a vertebra. Merriam-Webster's at 797.

of enhancement. R. 140. Patrick Jacon, M.D., one of her treating physicians at Shands, concluded that there was a strong possibility that the syrinx[10] had recurred or was enlarging. R. 142. The dictations reflect that Wilkinson did not feel any pain in the arms and hands. R. 141. Melvin Greer, M.D., dictated on March 22, 2004, that he was unsure whether Wilkinson had a specific treatable condition. R. 135. Ultimately, Shands noted an abnormal nerve conduction study revealing right cervical polyradiculopathy or cervical cord pathology resulting in dysfunction damage. R. 132. The report stated that "no intervention needed to be taken at this time and the patient will be followed conservatively." *Id.*

Wilkinson voiced complaints similar to those previously made at Bert Fish to Alvan Barber, M.D., on August 4, 2004: that she could not use her right arm or hand or lift more than 10 pounds with her left arm or hand. R. 117. Dr. Barber found that Wilkinson "could be limited in sitting, for long periods of time, because of decreased range of motion in upper extremities, lower extremities, and back, as stated on range of motion report form, due to pain and tight muscles. Claimant could be limited in lifting or carrying heavy objects. . .pushing and pulling with right hand, repetitive actions with right hand." R. 120. Dr. Barber noted that Wilkinson was not receiving any treatment or medication for her complained of condition, nor did he render any treatment as a result of her consultation. R. 117.

On April 8, 2004, Wilkinson was evaluated at Bert Fish Medical Center at the request of one of her treating physicians at the University of Florida College of Medicine, Dr. William Friedman. R. 172. At the conclusion of physical therapy, Wilkinson continued to have atrophy of the right upper extremity secondary to nerve injuries of long duration. *Id.* However, Wilkinson reported increased fine motor coordination, and she had a slight increase in grip strength but was not able to sustain grasp of weighted

---

[10] A syrinx is a pathological cavity in the brain or the spinal cord. Merriam-Webster's Medical Desk Dictionary at 813.

objects. *Id.* She was discharged from the occupational therapy and was to continue a home therapy program to maintain strength of the right upper extremity. R. 173.

In the course of evaluating Wilkinson's disability claim, the state agency had an assessment done by one of its physicians. R. 144-151. Keith R. Holden, M.D., felt that Wilkinson could perform the requirements of light work. R. 144-151. Wilkinson was examined and evaluated by Gregory M. Lower, D.O., on September 29, 2005 at the request of Wilkinson's attorney. R. 161-170. Dr. Lower completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) and a Disability Evaluation. *Id.*

Upon examination, Dr. Lower found that Wilkinson could sit, stand, or walk 15 minutes at one time and a total of two hours in an 8-hour day due to scoliosis and disc disease; that she could not lift or carry due to no upper extremity strength; that she could not handle objects due to no strength for gross or fine motor manipulation; that she could not bend due to lumbar disc disease; and that she could not push or pull due to no strength. R. 161-162. He concluded that her prognosis was poor because her condition was progressing and permanent. R. 161-162.

Dr. Lower specifically examined Wilkinson's upper extremities and found that "[t]he patient demonstrates bilateral intrinsic minus hands consistent with a chronic neuropathic process." R. 166. As a result of his examination, Dr. Lower stated that household chores which require upper extremity material handling increase the pain in her neck and progressive weakness in both extremities, right greater than left. R. 163. He stated that Wilkinson "would have difficulty being gainfully employed in any capacity" and that her condition was permanent in nature. R. 168. He concluded that:

> Within a reasonable degree of medical probability, this patient's multiple orthopaedic disabilities, compounded with upper extremity neurological deficits from her cervical

> hydromyelia, would give her difficulty with both gross and fine motor manipulation, standing for protract-ed periods of time, walking long distances, and a poor sitting tolerance.

*Id.* He classified Wilkinson as a "limited community ambulator without the aid of an orthopedic device. *Id.*

Upon examination and review of Wilkinson's medical records, Dr. Lower gave the following clinical impression: (1) Arnold Chiari deformity type 2 status post decompression for hy-dromyelia[11] and catheter placement, (2) status post arthrodesis of right thumb and tendon transfers with loss of range of motion and a complete loss of grip strength in right upper extremity, (3) right shoulder impingement syndrome[12] with loss of range of motion, (4) severe decompensated scoliosis,[13] severe multilevel degenerative disc disease, and significant mechanical back pain, and (5) bilateral chondromalacia[14] of the patella of the knees. *Id.*

### B. THE ANALYSIS

#### 1. **Weight of Treating Physicians and Opinion Evidence**

Wilkinson contends that the Commissioner made findings which are not supported by substantial evidence and applied incorrect legal standards in determining Wilkinson's RFC. Doc. No. 10 at 9.

---

[11] Hydromyelia is an abnormal widening of the central canal of the spinal cord, creating a cavity in which cerebrospinal fluid may accumulate, resulting in abnormal pressure on the spinal cord. It is associated with a number of disorders that disrupt the normal flow of cerebrospinal fluid, including Arnold-Chiari type I and type II malformation. Symptoms include weakness in the hands, arms, and legs and sensory loss in the neck and arms. Some patients have severe pain in the neck and the arms. NINDS Information Page at www.ninds.nih.gov.

[12] Right shoulder impingement syndrome is the improper alignment of the bones and tissue in the right upper arm, narrowing the space between the acromion and the rotator cuff. Dynomed.com at www.dynomed.com.

[13] Decompensated scoliosis is loss of physiological compensation through a lateral curvature of the spine. Merriam-Webster's Medical Desk Dictionary at 195, 795.

[14] Chondromalacia patellae is pain over the front of the knee with softening of the articular cartilage of the patella. Merriam-Webster's Medical Desk Dictionary at 140.

-11-

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Comm'r of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record as a whole; 5.) specialization in the

medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

The ALJ was thorough in explaining his decision to not accord Dr. Lower's opinion controlling weight. According to the majority of the record, Dr. Lower's observations were contrary to the remaining treating physicians' opinions. The record indicates that Wilkinson had improved functioning of the right hand following therapy, and she was released to continue the therapy independently due to progress. The

record reflects that Wilkinson was never prescribed any medicine for pain. She was prescribed Valium for her muscle spasms, and only took over-the-counter Tylenol, the arthritis form, for pain.

The ALJ found Wilkinson to be credible when determining her RFC to the extent that she would experience pain with heavy lifting, or prolonged periods of walking or standing; however, the record did not reflect that Wilkinson lacked the ability to perform light work. Accordingly, the ALJ was reasonably persuaded by the opinion of the state agency consultant, Dr. Holden, which was consistent with the record in its entirety. Furthermore, the Commissioner correctly points out that Wilkinson did not prove Dr. Lower to be a vocational expert. Therefore, ALJ's findings were supported by substantial evidence and the correct legal standards were applied in determining Wilkinson's RFC.

### 2.  **Legal Standards Considering Symptoms**

Pain is a non-exertional impairment.  *Foote*, 67 F.3d at 1559; 826 F.2d at 1003.  Congress has determined that a claimant will not be considered disabled unless she furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1529.  If an ALJ rejects a claimant's complaints of pain, "he must explicitly state as much and give reasons for that determination." *Foote*, 67 F.3d at 1561.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

-14-

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

The ALJ did not misapply the correct legal standards when considering Wilkinson's symptoms. As already mentioned, the ALJ noted that Wilkinson's testimony was not fully credible concerning the severity and extent of her symptoms because the objective medical evidence of the record did not support her contentions. The ALJ found Wilkinson to be credible to the extent that she would experience pain and difficulty with heavy lifting, or prolonged walking or standing, and her RFC was reduced accordingly. However, when considering the objective evidence in its entirety, the ALJ concluded that the medical signs and laboratory data did not support a finding of disability. Important in the ALJ's reasoning was the lack of treatment and medication prescribed to Wilkinson and the various reports of improvement. Indeed, the only medication Wilkinson was prescribed by a physician was Valium to control muscle spasms. The sole medication she took for pain was over-the-counter Tylenol. Accordingly, the Court does not find that the ALJ erred in applying the legal standards in regard to Wilkinson's symptoms.

## VI. CONCLUSION

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** on February 7, 2008, in Orlando, Florida.

*Donald P. Dietrich*
DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and to:

Mary Ann Sloan
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL              33602

Richard A. Culbertson
Law Office of Richard A. Culbertson
Suite E
3222 Corrine Drive
Orlando, FL    32803

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Social Security Administration
OHA Hearing Office, SSA
Desoto Building, Suite 400
8880 Freedom Crossing
Jacksonville, FL        32256-1224